May it please the Court, my name is Charity Shreve. This is my co-counsel Ryan Peck. We represent Kathy Burgess. I will argue all Fair Housing Act issues and my co-counsel will argue all other issues. We'd like to reserve five minutes for rebuttal. Now, does that mean you'd like to go seven and a half minutes? Okay. We'll see if we can do that. Okay. I'm willing to talk as long as you're willing to listen. Do you want to put seven and a half minutes on the clock? That might help us out. Thank you. Your Honors, this is a case because this case is about Alameda Housing's actions or their inactions. And as a result of this, Ms. Burgess ended up homeless for 15 months with her two children. Ms. Burgess pled two claims under the Fair Housing Act. She pled that Alameda Housing failed to reasonably accommodate her disability and that Alameda Housing retaliated against her. However, the district court dismissed all of her Fair Housing Act issues. He dismissed because he stated that the Fair Housing Act does not prohibit discrimination on the basis of a disability or on the basis of a handicap under the Fair Housing Act. I was wrong about that, right? Flatly. Dead wrong. The Act was amended in 1998 to prohibit discrimination on the basis of a handicap. Much earlier than that, I thought, not in 98. 1988. 1988, yes. It's been around a while. Under her claim for failure to reasonably accommodate, Ms. Burgess not only did not also Let's back up a minute. Okay. The complaint was dismissed for that reason originally, but was ultimately dismissed because she failed to obey an order to file an amendment within a certain amount of time. So do we get to the, this clear, what seems to be a plain error with regard to the Fair Housing Act question, if there was a proper dismissal essentially under Rule 41? First, Your Honor, I would, I would, my co-counsel will argue this, that it wasn't a Rule 41. But we do get to the Fair Housing Act. It wasn't or it wasn't a proper one? It was not dismissed pursuant to Rule 41, the second order. But under the Fair Housing Act, we don't get to that because he dismissed her Fair Housing Acts, her claims, did not grant her leave to amend on those claims in the initial order. And so this is dealing with the initial order. And then it's our contention that that initial order, even when he dismissed with leave to amend the other issues, was sufficient. But again, under the Fair Housing Act issues, we get to that because of the initial order where it was dismissed when he got the law wrong. Let me ask you this as to the failure to accommodate her disability. As I understand the story told in the complaint, she says to the Alameda County housing people, I would like to take the papers over to Concord because I think it's safer that way. The Alameda people say, no, we'll take care of it for you. We'll send them. And according to the complaint, that never happened. Either they were never sent or they were sent to the wrong place. They did not arrive in a timely fashion. And as a consequence, through a series of events, she ends up homeless. How is that a failure to accommodate a disability? I could understand it if they had said, listen, you're disabled, but we're not going to mail them for you. You're going to have to carry them yourself. This sounds as though it's almost the opposite. We'll take care of it for you. Then they fail to do it. But I don't understand how that fits with a disability failure to accommodate. Her, the failure to accommodate was after they didn't send her portability papers. She had her voucher. She attempted to find other housing. They would not grant an extension on her voucher. They made the first, they granted an initial, the minimum amount of time that they grant for everybody, minimum amount of time on her voucher, and then she attempted to find other housing. But because of her disability, she couldn't find this other housing in time, and her voucher expired. And is there a specific provision that, while it ordinarily only allows for one extension, allows for a longer extension to accommodate a disability? Yes. Yes. HUD regulations, I can supplement that later. I've read it. I know it's out there. And it says that when a person is disabled, under HUD regulations, you can extend that voucher as long as they need to find housing. So there is a provision. That's where it comes in. Okay. Help me understand the retaliation aspect of this. Okay. What's the argument that she's been retaliated against under the Housing Act? Ms. Burgess requested amount of, a review of the amount of rent that they had been paying for disabled persons. Where is that in the complaint? I found that where it says that she was looking for a review of the amount of her rent. But where is there a more generic request that's anywhere tied to disability? On page, Excerpts of Records, page 13, I think it's under Claim 4. It says that it was possibly a punishment for a question review of why the rent always seems to be more at the ACHA than any other housing authority. But that doesn't have anything to do with disabled people in particular. Well, I think, looking at this complaint, I also, on page 24, she says retaliation of the complaint. I understand that. But I don't, I didn't see, looking at it closely, where it was tied into anything that was protected under the Fair Housing Act. Okay. I understand this is a pro se complaint and we have to read it very liberally. But reading it as liberally as I could, I still couldn't find that. I've looked at that site. Let me, let me refer to my brief. Let me, let me address that in rebuttal. Okay. And I will look at that. And I have one other related question. Okay. Judge Jenkins did specifically advise her that she had to explain her disability in a more than conclusory way. And that would be necessary to the Fair Housing Act, as well as others, even though he was wrong in the law with regard to the Fair Housing Act. So the question is whether she adequately alleged her disability and whether she failed to follow his direct, his specific directive to amend with regard to the nature of her disability. He did that under the ADA. And he said that under her ADA claim. Right. But presumably... And we're not waiving the ADA claim. But he didn't give her the chance to do that under the Fair Housing. So even though she didn't do that under the ADA, I don't think that precludes an FHA claim, especially at this stage of the pleadings. But did she adequately allege her disability? I mean, does one have to, in alleging an ADA or FHA disability claim, say anything more than I was disabled? Do you have to say why or how you were disabled? At this stage of the pleading, she has to put the defendant on notice of its alleged wrongdoings. And so it's my contention that she saying she was disabled and saying this is sufficient because we're under the... You said in your brief that there was some specific information about what her disability claim was. In the supplemental excerpts of records, on page 2, she writes how she has, let's see, trouble with her hands, damage to her arm. These are letters to the court. And then also on page 18 of the supplemental excerpts of records, she requested more time because she had trouble reading printed documents and correcting them, and she needed more time. I mean, this is, if she has trouble reading and writing, it's going to be a problem finding Section 8 housing where there's a lot of paperwork. And your argument is that the judge, district judge, should therefore be on notice and the defendant should therefore be on notice, even though it's not contained in the actual complaint? About her particular disability? Well, she asserts, I think that from the complaint alone, she's put on notice that she's disabled. She asserts that. But I think looking at these further records, it's further evidence. But again, you know, it appears that the Judge Jenkins applied a heightened pleading standard. He asked in his order for specific facts, specific facts, and I, under Rule 8, Federal Civil, under the Federal Rules of Civil Procedure, Rule 8, she has to put the defendant on notice. And I don't think that requires going into detail about how you are disabled. She stated that she couldn't find this housing, that it was difficult, and not that, but she also said that Alameda Housing knew that she had trouble, knew this. I'd like to help you save your time. You've run over your seven and a half. You've got about a minute left, but we won't be terribly strict in enforcing how much rebuttal. Okay. Well, are there any further questions? I'll turn the time over to my co-counsel. At this time, no, but we'll have another chance after. Yes. Thank you. Thank you. And if we could start again. There we are with seven and a half minutes. Your Honors, Ms. Burgess has valid claims, which she – May it please the Court, I am – Now, Ms. Burgess has valid claims, which she adequately stated in her complaint, but she has been barred from seeking relief because, through her lack of legal sophistication and through the district court's errors in applying a heightened standard for the pleading requirements for her complaint. Okay. So now, why isn't this a Rule 41 dismissal, and why isn't it a proper Rule 41 dismissal? The Rule 41b dismissal question comes down to the fact that the judge, first of all, never stated in his order why he was dismissing. In his final order, he never stated that he was dismissing under Rule 41b. And it would seem that even had he attempted to do that, according to Edwards v. States, when it's talking about this – this rule, the Furtick-Urish rule, it states, the Furtick-Urish rule – we understand the Furtick-Urish rule to require a threatened Rule 12b6 dismissal to ferment into a Rule 41 dismissal only upon a plaintiff's inaction. And it is clear in this case that the plaintiff was not – was anything but enacted. I gave her 10 days to amend a complaint, and she didn't do it. No, she did. She filed a more definite statement. Although it was entitled a more definite statement, this pleading was clearly an attempt to amend the complaint. She was active in her attempts to do – to follow the district court's instructions. She may have been confused because in the original motion for dismissal, the defendants also filed a dismissal under a more definite statement. In the judge's order, he says that she's required to give a more definite statement. Because of her lack of legal sophistication in attempting to comply with the judge's instructions, she states that, you know, she files this more definite statement, but it's clearly an attempt at an amended complaint. If we were to look at the name as a bar to her – to this, it would be exalting form over substance. It doesn't look a lot like an amended complaint. It looks like a brief or something. Well, although it – although it looks like a brief, it clearly sets forth claims and attempts to remedy what the judge considered inadequacies in the original complaint. But despite – The one thing that she flatly refuses to come forward with is any more information about the disability, right? She just says, I'm not going to – I won't do that, essentially, doesn't she? With regards to this disability question, this is one – another example of the courts using a heightened pleading requirement. The court seems to require – want to require these specific facts and laws with regards to several claims in order for them to be adequate, which is much more akin to maybe a California code pleading standard than a Rule 8 notice pleading standard. Under Rule 8 notice pleading, there's no requirement to allege specific facts of her disability at this stage. Clearly, you know, in furthering her claim upon, you know, further – you know, she will have to bring that out in the trial or even on a summary judgment dismissal. But a Rule 12b-6 with the liberal notice pleadings and the liberality given to a pro se litigant, she wouldn't even have – she doesn't have to allege the specifics of her disability. Ginsburg. If this case goes back, I assume the University of Idaho wonderful clinic is going to go back and do whatever they do, and that this should be back in district court as a pro se case with a – with Ms. Burgess representing herself again, and – Yes, that's correct. And how is the district judge going to – I mean, this is just a problem of pro se plaintiffs, but here we have a situation where maybe she gets by in the pleading but barely. And then what? How does the case go on as a practice? Well, then she's allowed to do discovery and she's allowed to go forward on her claims, and in the event of a summary judgment, she could argue at that point that, you know, the specifics of the case. Even between the time that she was given granted leave to amend and through the dismissal, she was attempting to do discovery. I mean, she wants to get on with her case. The point here is that she has valid claims. One example of this is clearly the procedural due process claim. She adequately stated in her complaint that she was deprived of Section 8 benefits when the Alameda Housing failed to send the portability papers to Concord Housing. I have trouble, actually, with that section of the brief because that section of the brief relies on basically the hearing cases, Matthews and so on, where the failure of due process is the failure to provide proper notice, proper so on, connected with hearing and fact-finding. This is not what's going on. And, of course, the allegation is that Alameda failed to follow its own procedural rules in terms of forwarding papers and so on, but how does that fit into our procedural due process cases? Because the courts in Ressler v. Pearson and even the district court found that One of the benefits of Section 8 housing is this in the regulations, this requirement that they assist her in the portability process and send over this paperwork. Yes, I understand all that. And if this had been a case where Section 8 housing was taken away from her because of, and I'm now, of course, making this up, she was a felon, and they didn't hold a favorable interpretation of her complaint is she lost her Section 8 housing because they failed to forward the papers. This is, they didn't make an erroneous determination about her at all. They simply failed to comply with their bureaucratic requirements. Well, not only did they fail that, but they, she, in the complaint, she's alleging that they did it willfully and that they willfully determined not to send these portability papers. But assuming all that, it's still not a process problem. Well, they didn't give her with regards to this decision not to send over the portability papers. They gave her no notice or an opportunity to respond to that decision. And so she went for it on the basis that they were going to send the paperwork, terminate her housing. Does the complaint allege simply a violation of their own regs as being a basis for relief, or is that not available to her? No, we're not necessarily, with the procedural due process claim, we're not alleging it's merely because they violated the procedures. I understand that, but I'm asking why she couldn't bring a claim, could she bring a claim directly under the regulations saying your regulations say you're supposed to do what you did, why, and as a result, I didn't get the housing? Yeah, I believe that she can. Is that complaint now in the pleadings and could it be? I think it definitely, reading this complaint, that is a valid claim that could be, that could certainly be looked into. And especially would be an opportunity for a valid claim on remand. The essential point of this case is that Ms. Burgess has been wrong. She has valid claims, and because the judge used a heightened standard of pleading and didn't afford her the liberality to do a pro se litigant, she was unable to bring these claims. One of the major policies behind notice pleading is to allow people like Ms. Burgess to seek relief. If there are no further questions, I'd like to reserve the rest of my time. Okay. Thank you very much. Now here from the other side, and you've got 20 minutes. Thank you, Your Honors. Good morning. My name is, may it please the Court, my name is Larry Lulofs. I'm here representing the Alameda County Housing Authority, which is a public entity charged to help people who have these problems and help them with their housing needs, whether they're disabled or indigent. And they're in the business of helping people, not in the business of denying people their rights. I wanted to make that clear for starters. I'm surprised that the appellant, well, let me just say, first of all, that we, last night while preparing for, yesterday while preparing for argument, I checked everything. And, of course, we found this Court's decision, Justice Berzin's written decision in the case of Edwards v. Marent Park, which did not exist at the time we filed our brief. And my counsel on the other side apparently had also found it because they had made copies and brought them to court. So we brought copies in anyway. I think this case is really dispositive on the key issue in this case, which is, is this, what is the standard of review? And until we answer that question, we can't go forward. And I think this case makes it very clear that the standard of review is Rule 41B and whether this is to be ---- Well, Judge Jenkins didn't invoke Rule 41B, did he? He didn't say that, but he doesn't have to. There's a number of decisions that state it's not necessary for the judge to say I'm dismissing your case because you failed to amend. He gave the plaintiff multiple opportunities to amend. Well, he ordered her to amend in 10 days. He gave her 10 days, right? No, that was the second order to show cause. That's a clear order. That could have been violated as such because she didn't, the earlier one didn't have a deadline. Oh, right. That's after we asked him. We were a couple of months from trial and we said, I said to my associate, I guess we're not going to file a summary judgment motion because we don't have time to go pleading here, but let's find out what's going on, and then we finally got through. Right. And so then he asked her to file something in 10 days. Now, she does file something in 10 days. It was, you know, not what anybody who was a lawyer would think looked like a complaint, but in terms of defying the judge, she did file something. She even filed it after ---- It wasn't quite 10 days. She filed it about 8 days after the 10 days ran. So he gave her, first he gave her 60 days to amend from October 31, then 10 days, then another ---- When he gave her leave to amend, at that time he did not set a time period. No, he did not. It's only on December 19th that he says you have 10 days. Correct. So here he is in San Francisco on December 19th, I needn't remind us, six days before Christmas, saying to a disabled woman in Texas with two kids, you have 10 days to file an amended ---- to file an amended complaint. And for some odd reason, she doesn't get around to filing a piece of paper until January the 7th. Which then was not an amended complaint, but rather something that looked like a more definite statement. That's what she called it. I understand that we may have some characterization difficulties in the nature of that paper being filed. But having signed an order on the 30th of October, filed that order on 31st of October that contains no date at all, signing an order on December 19th, giving this woman 10 days over the Christmas holidays to respond, I'm unwilling ---- I have not spoken to my colleagues to sustain this on the basis of Rule 41. I would be willing to look to the merits of the proposition, that is to say, under 12b-6, has she stated a claim either in her original complaint or if we characterize this as an attempt to amend the complaint. But as a Rule 41 dismissal, for me, there's not enough here. Speaking only for myself. I understand. I'll try to address that somewhere in the course of these remarks. Okay. My impression after reading the decision in Edwards is that unless you file that pleading that says, I'm not going to take any further action in this case, I'm going to stand on the record. Then you're evaluated under Rule 41, but that doesn't mean that the Rule 41 standard is always complied with. And what Judge Fletcher was outlining for you was his understanding of why he thinks there was an abuse of discretion under Rule 41. In other words, Edwards basically says you don't apply Rule 41 at all if somebody stands up and says, I'm not going to amend. Right. And this woman did ---- this lady did not do that. In fact ---- She did on some issues, like on the disability question. Right. Correct. Right. She stood up and she said, I'm not going to say anything more about disability. I think that's enough. She made a ---- we still don't know what her disability is. I understand that. But that's a merits question. Right. But as to whether or not she was going to amend to add the disability, she said, I'm not going to do it. Well, the point of that whole ---- I think the point of ---- what I take from the work is the use of judicial resources. It's something to tell the court, oh, you don't have to keep tracking this thing because now we know how the plaintiff is going. And if you look at the whole record in our case, there's not one ---- there are at least four or five orders to show cause to this plaintiff, beginning at the outset, going right up to the date of trial, such that the court has to end up striking its ---- vacating its pretrial conference and vacating its trial date. And so if you want to look at it from the standpoint of judicial resources or the sources, the use of judicial resources, the waste of judicial resources, then this is a pretty good example of why a plaintiff needs to let the court know that they want to stand on the record. The most disturbing about this case to me, most disturbing, is that the judge was flat wrong about the fair housing. Flat wrong. Do you agree with that? On the FHA. Yes, on the FHA. Right. Right. So he ---- the direction he gave her was totally wrong. He dismissed that complaint, that issue, and he was wrong. And to now wash out that cause of action, which was in the complaint and was relatively clear on the complaint compared to other things, and was ---- as to which he was plain wrong because if something else she did that had nothing to do with this. In other words, he couldn't ---- he did not give her leave to amend that Fair Housing Act claim. He said it's ---- there isn't one. If ---- all right. If she had ---- let's say she had amended. Let's assume that she had amended, followed his orders and amended the three causes of action that he said that she could amend that could possibly state a claim. If he ---- if she had done that, she would have preserved that issue for appeal, but she didn't do any of that. She didn't ---- But why should that affect whether or not she can go forward on this thing that as to which he was just flat wrong and in which she didn't give her leave to amend on? Well, because there are ---- I think because there are sanctions that follow when people fail to follow the court's directive. And why is the sanction, and this may be contrary to Edwards, but just logically speaking, why isn't the sanction that you can't go forward on the claims that you didn't ---- we gave you leave to amend on and you didn't? But what about the ones that I didn't give you leave to amend on and I was wrong? Well, I'm not aware of any decision that says we have this other standard that says, okay, we're going to come back and let you have those. You know, but you either get thrown out with the bath or you don't, in my experience. You either can state a claim or you can't. And if you get thrown out on a Rule 41b, then you're out of luck. Your whole case is gone. And no, she did state a claim under the Fair Housing Act. Well, she hadn't actually. There are things that she could state one, but she hadn't stated is my take on the FHA claim. Well, we argued that in our brief. If I could just take a minute. I have a few minutes, don't I? To prevail on an FHA claim, I think she has to allege that she was discriminated against in the terms or privileges of the dwelling and that it was because of the handicap of that person. We still don't know how. And she didn't allege that. And there are references in here to handicap. There are references to I'm handicapped. But there's no allegation in which she says, oh, you know, I was – why would – where she says, I was actually denied housing in Contra Costa County because I have some disability. She didn't really – she didn't allege that. It's an inference that you might draw from all of these other letters to the Court. But how about the argument that she was entitled to an extension, she didn't get an extension, but she was entitled under the FHA to an extension because of her disability? She did get an extension. She asked for and received an extension. Further extension. She didn't ask for a second extension. And according to the FHA – according to the regs, there is no – And how do we know she didn't ask for a further extension? I'm not sure that – she hasn't alleged that she asked for a further extension. And the denial – and furthermore – that's my understanding at this point, my understanding of this rather large record. We're all struggling with understanding what the allegations are. Because in order to make our arguments at the trial court, we had to try to divine what she was – what was being said in the complaint. So, of course, it's also my firm understanding that the regs say that you don't get a hearing on the issue of whether you get an – whether you're entitled to an extension or not. And we cited that in our brief. In other words, oh, I think she says at one point in time, I wanted a hearing on that issue or I should have had a hearing or the failure to give me a hearing on my request on another extension, that's a denial of my rights. But you're not – according to the regs, you're not entitled to a hearing on that issue. In other words, the federal regs speak to that issue and say, we're not going to have our housing authorities being tied down – you know, being required to give hearings on the issue of whether they should even be giving extensions. She got an extension. She got one extension anyway. She doesn't – The complaint says, after the loss of the second unit, the plaintiff requested an extension of her voucher as noted above, but the ACHA only allowed her the minimum amount of time to find housing and they refused to allow the plaintiff any extra time when they knew that they had aided in or caused the loss of the second housing unit for the plaintiff and her family. Okay. And then I stand corrected on the record. As I said, there's an awful lot of facts in this record. Yeah. Or allegations. Allegations and facts. She doesn't actually come out and say, by the way, that she didn't get the housing in Contra Costa because of that. Let's assume, and you don't need to concede fact, but let's assume for the moment that she has stated in her original complaint a cause of action out of the FHA if her allegations are read broadly and if she can eventually support them on the facts. Is it your contention that she cannot appeal that dismissal on the merits now because of what you characterize as the Rule 41 dismissal? It's my understanding. She had no appealable order until we get the final dismissal. She could not have appealed that. Right. And she was not given leave to amend. It was just an outright, you have not stated the cause of action. So she's now dismissed on the remaining claims, if we sustain that dismissal on the remaining claims for failure properly to amend or perhaps for failing to comply with the court order. But how does that affect the appealability of the earlier dismissal on the merits without leave to amend? Why can't she appeal that? Because it's my understanding that the public policy behind, if you will, the five factors enumerated in Jurich and other cases focus on, you know, the overall picture of the disruption to the court's calendar, the prejudice to the defendant, and that if we're going to do that, if we're going to dismiss these cases when people fail to amend, we're not going to look to the court. So you would view this as if it is a 41b dismissal and if sustained on that basis as a sanction and should be sustained as to the entire case. Yes, I would, Your Honor. Okay. I understand the argument, then. Because otherwise I think we end up, you know, piecemealing, if you will. So why should a person who has failed to follow a court order? Maybe it's a rhetorical question. I won't. This is a separate question and a bit outside the record. I assume that you've done some work to figure out what happened as you try to prepare this case. And I'm not going to ask you what you've discovered or think you've discovered as to what happened. Have there been attempts to settle this case? I mean, this is a procedural disaster. I mean, there's no getting away from that. Is there some easy way to take care of this case? There's no easy way. In answer to your first question, there have been attempts to settle the case. In fact, the Court referred this case to a magistrate judge for a special settlement conference, which is another use of judicial resources. And that was a – that settlement conference was a total – how can I put it? It was a total failure. The district court – We were worlds apart. But the district court does sometimes appoint counsel simply for settlement conferences and mediation. Did that happen here? That did not. The district court has the means to do it. That did not happen here, Your Honor. They do – they can and they do do it sometimes, specifically because it's difficult with pro se clients. I know. I have just been told that I couldn't have a magistrate judge in a civil rights case where we – where we wanted one because of a lack of – you know, because of the demands upon their time. So in this case, no, that did not happen. We did have the settlement conference, as I say, with the magistrate judge. The plaintiff, in fact, did not attend but was permitted to attend by telephone from Texas. And, in fact, she did that on a number of occasions, appeared by telephone. And we were in different galaxies. One kind of a peripheral question, I guess, is that your basic position that she has no claim based on what the housing authority did to her or that she has not stated a claim? In other words, could she state a claim, as you understand the facts, but she just hasn't done it? Well, we tried to approach this, Your Honor, from both standpoints, both from 12b6 and Rule 41. But it was our position that she – we didn't think that she could state a claim, even though the court had said, well, we're going to let you state – amend three causes of action. Did you represent to the district court that the Fair Housing Act didn't have a disability component? Did I? That they did – you personally did, the housing authority. And had this happened, that that, you know, very fundamental error was made? I'm not sure, Your Honor. I don't have the details. But I can tell you this, that when we looked – when we started our research in response to the appellant's supplemental brief, we recognized – we felt at that time that an error had been made by the district court on that particular claim. I have four minutes left. Any further questions? Okay. I just wanted to just note that I was surprised that the appellant divided the case in the manner that they did, because they never really addressed the Eurish factors. And so it seemed to me that they were – they seemed to be saying, by not addressing those issues, by not addressing those factors, they seemed to be conceding that if this was a – if this was an appropriate case, or this was a case in which the judge dismissed because the plaintiff had failed to amend them, that they were conceding that we had met – met our standard in that regard, because they did not. Well, let me ask you a question in that regard. Yes. In terms of Edwards, Edwards was my first introduction to this strange Rule 41 law. Why couldn't we read her – or could we read the so-called motion for a – or a more definite statement as essentially the statement that she wasn't going to amend her complaint? In other words, as a statement called for in Edwards, which then triggers a 12b-6 review rather than a 41b review. Wasn't that what she was really saying, I'm not going to do it? Well, they've argued that she did do it, that she – that she attempted to amend which runs the other direction. All right. But if she – wasn't she really saying, you know, I'm – I'm – certainly that's exactly what she said on the disability issue. And more generally, she was arguing the merits and she was saying I'm in no position to amend the complaint. Isn't that what she was saying? Well, the way I read your decision in Marin Park is that you have to do it timely, which – so that's the first part that she didn't do. She missed that one. So that's why – Right. But we have this very strange timing problem, which is that, you know, we're dealing with Christmas – that was a very odd order, 10 days to somebody in Texas in the middle of a Christmas vacation. With a trial date in January, though. So it's perhaps understandable. But she did file before the trial date in January. She filed before the trial date, but after the court's second – Damage. After the deadline. The question – the question of amending a complaint, one way to amend a complaint is to supplement it. You don't have to file a document that says third amended complaint. You can file a supplement, which is effectively an amendment. If that were done here, if you look at a more definite statement as a supplement, then the district court should have said, well, she tried to amend her complaint and get back to whether or not that complied with 41. Not because it didn't say amended complaint, but because it was, in effect, a supplement. In my experience, courts don't generally like supplemental complaints. They want to read – you're right. I mean, that is one way to do it. They want to read it all in one pleading. This is draconian. I mean, a Rule 41 dismissal is draconian. Right. It's severe. And the overall point I think that we're generally making is that it does – this doesn't read like somebody was trying to defy the court. It reads like somebody was incompetent, unable, and so on. But she was told to file a piece of paper, and she did file a piece of paper. And she was a little late, but that's understandable as well. And is this the kind of a case that should be dismissed without getting to the merits, especially when we know that on the merits there was at least one big mistake made? Not necessarily in the long run, but in terms of that notion that she couldn't plead at something. Well, I know that the courts want to make themselves available and accommodate people who are pro se litigants and look out that their rights aren't trampled  upon. But when you look at the whole calendar of events, the orders to show cause that preceded the final order of dismissal, I think you'd have to say that this was a real drain upon the court. Let me read to you from page 5 of Judge Jenkins' October 30th order. You don't need to find it. It just – he says, Plaintiff also claims defendant followed a fall of specific rules under HUD, but without a more definitive statement of what rules defendant failed to follow, okay, without a more definitive statement. And then Judge Jenkins dismisses with leave to amend. But he doesn't say with leave to amend the complaint. He says plaintiff is given leave to amend, but only on the following issues. She then files something that she calls more definite statement. Well, more definitive statement? I mean, I guess she could have said amended the complaint. But this looks to me like an attempt to follow what he's told her to do. Now, she's not a lawyer. She's not very good at it. But as I read that order as a layperson, he asked for a more definitive statement. She tried to give a more definite statement. Well, okay. I'm late, but I'm not that late. And you gave me 10 days on the 19th of December. And the page 8 of your order was missing. So she says. You're suggesting that he was telling her to file something that perhaps supplemented her original complaint. And she tried. I don't know what he had in mind. I think he had in mind that she should file an amended complaint because then when he – Well, I'm sure that's what he had in mind. Then on December 19th he said that's exactly what he said. Of course. Well, any lawyer knows amended complaint. I mean, that's what he's asking for to us. But when he says I want a more definitive statement and she says here's a more definite statement. Okay. We got it. Okay. Thank you very much. Thank you. We've got some rebuttal time. You attempted to say five. You've got a little less than that, but we won't be draconian about this. I appreciate it, Your Honor. I don't think I'll need that much. I just want to make it clear from the get-go that we plan on, I mean, as an appellate clinic, I want to address part of your concerns that we plan on helping her even after this argument to make a, you know, a complaint that's more satisfactory and not so confusing. And so we're not just going to leave her out to be, you know, to fly solo with that regard. And so it will be a valid opportunity to proceed. With the ‑‑ I'd like to address some of these issues with the Marin Park and the Juris decision. This just simply isn't a Rule 41B dismissal under that. This wasn't something where she was either trying to do an amended complaint in which Edwards would say she wasn't inactive and, therefore, it's not a Rule 41B dismissal, or because she didn't have counsel, what her more definite statement amounted to was a tactical decision to rely on the merits of what she had already set forth, which in Marin Park, by the time the plaintiff in Marin Park was given an opportunity to amend, she had retained counsel at that point, and the counsel was part of the tactical decision to rely on the original complaint, which this court found was a valid thing to do. And so Ms. Burgess, having no counsel, which is obviously a significant factor, didn't understand that she could make that tactical decision in this case. This just clearly isn't a Rule 41B situation. Also, same in Juris. Was she ever told that if you don't do this by the end of the 10 days, the case can be dismissed? In the rule order, in the October ‑‑ in the December order that gives her 10 days, the court said that not filing it within the 10 days could amount to a dismissal of the case. But then in the final order, the court does look at her more definite statement as an attempt at an amended complaint, even though he dismisses it as being, you know, grossly inadequate. Also, but this ‑‑ In other words, if that's what's happening, then he's not really dismissing her for failure to comply with the order, but for filing an inadequate complaint. Exactly. He ‑‑ it's more logical to read this dismissal not as a Rule 41B sanction, but as, especially since he didn't say why, but as a dismissal under the only order that was out there, which was the motion for, I mean, the dismissal under 12B6. And that's how this Court should review that ‑‑ this case. Does your co‑counsel also want to say something? Because you're halfway through your rebuttal time. Yes. I'll be done here in just a second. The most important thing is that we feel that she has valid claims. She needs to have an opportunity to adequately bring these claims. This is a ‑‑ this, you know, and with the judge getting the law wrong and this heightened pleading requirements, it's clear that she needs to have an adequate opportunity to bring the claims. And I'll turn ‑‑ if there are no further questions with regard to the Rule 41B or the other issues that I addressed, then I'll turn the podium over to my co‑counsel. Thank you. In the category of famous last words, I've noticed, is the lawyer who gets up on rebuttal and said, I won't need all the time. Real quick, I want to make sure. We're not licensed in California, so we couldn't represent her in California, but we would help her in a mediation program, and we'd also give her advice on ‑‑ we can't help her with a California case. I found the source of the problem with the ‑‑ regarding whether or not she was engaged in a protected activity. The excerpts of records is missing page 24. That's the last page of the complaint where she talks about, in about two sentences, her retaliation claim. She says ‑‑ let me get it. I'll quote it real quick for you. Fourteenth cause of action, retaliation due to the plaintiff's request for the ending of an ADA violation. The plaintiff believes that the loss of her housing might be related in part to the asking of or requesting of an ADA violation. She lost her housing because she was worried about the ADA violation. That's a retaliation issue. If there are no further questions. It's missing the last page. I don't know if you want me to copy that and submit it to you. Well, I think we'll be able to find that in the record itself. If we do need it, there will be a supplemental order for the court. Unless you hear from us, you needn't worry. Okay. If there are no more further questions. We thank all of you for your very useful arguments on both sides. This obviously is a difficult case. The pro se cases are often difficult in precisely the way this case is difficult. Thank you. Thank you very much. The case of Burgess v. Alameda Housing Authority is now submitted. We'll stand in recess for ten minutes. And we will then resume with the first case, Salazar v. Department of Justice.  So, ten minutes. Okay. Yesterday? Yes. Good to meet you. Hello. Yes.  Good to see you. It's time to get out of here. Good to see you. Very good to see you. Good to see you. Good to see you. Good to see you. Hello, guys. Hello. Sorry for the delay. We now resume, and the first of the two cases is Salazar v. Department of Justice. Good morning.
judges: T.G. Nelson, W. Fletcher, Berzon